UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION, JONATHAN COUPAL, and DEBRA DESROSIERS, | No. 2:18-cv-01584-MCE-KJN |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| THE CALIFORNIA SECURE CHOICE RETIREMENT SAVINGS PROGRAM and JOHN CHIANG, in his official capacity as Chair of the CALIFORNIA SECURE CHOICE RETIREMENT SAVINGS INVESTMENT BOARD, | |
| Defendants. | |

The Howard Jarvis Taxpayers Association ("HJTA") and individually named HJTA employees Jonathan Coupal and Debra Desrosiers ("HJTA Employees") (collectively, "Plaintiffs") filed this action against the California Secure Choice Retirement Savings Program ("CalSavers" or "the Program") and California State Treasurer John Chiang ("Treasurer") (collectively, "Defendants") contending that the Employee Retirement Income Security Act ("ERISA" or "the Act") preempts the Program. Plaintiffs' Complaint requests two forms of relief: first, a declaratory judgment that CalSavers is preempted by ERISA; and second, an injunction pursuant to California Code of Civil Procedure Section 526a to permanently enjoin spending of taxpayer funds on the Program.

1

1  Presently before the Court is Defendants' Motion to Dismiss (ECF No. 9) pursuant to

2  Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1),[1] contending, in part, that: (1)

3  Plaintiffs lack standing; (2) the case is not ripe because CalSavers is not yet accepting

4  enrollments; and (3) the CalSavers program does not create an ERISA plan and thus is

5  not preempted.  The motion has been fully briefed.

6       This case presents novel legal questions concerning state-mandated retirement

7  savings accounts.  While the matter implicates a significant body of judicial and

8  regulatory interpretations of ERISA, it nevertheless coalesces around a single narrow

9  question: does CalSavers, a state-mandated auto-enrollment retirement savings

10  program, create an "employee benefit plan," such that it is preempted by ERISA?  For

11  the reasons set forth below, this Court finds that it does not and therefore GRANTS

12  Defendants' Motion to Dismiss.[2]

13

14                              **BACKGROUND**

15

16       Congress enacted ERISA in 1974 "to promote the interests of employees and

17  their beneficiaries in employee benefit plans" and to "eliminate the threat of conflicting or

18  inconsistent State and local regulation of employee benefit plans."  Bd. of Trs. of the

19  Glazing Health & Welfare Tr. v. Chambers, 903 F.3d 829, 845 (9th Cir. 2018) (citations

20  omitted); see also ERISA, 88 Stat. 832, as amended, 29 U.S.C. §§ 1001–1461.  While

21  ERISA does not require employers to provide any minimum set of benefits to employees,

22  if such plans are "established or maintained . . . by any employer," they must conform to

23  various reporting and fiduciary requirements of the Act.  Chambers, 903 F.3d at 845

24  (citing 29 U.S.C. § 1003(a)).  Regarding ERISA's effect on State statutes, it "supersedes

25

26       [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
27  otherwise noted.

28       [2] Because oral argument would not have been of material assistance, the Court ordered this
   matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

                                       2

any and all State laws insofar as they may now or hereafter relate to any <u>employee</u>

<u>benefit plan</u> . . . ." <u>Chambers</u>, 903 F.3d at 837 (internal citations and quotation omitted)

(emphasis added).

The term "employee benefit plan" is "defined only tautologically in the [ERISA]

statute . . . being described as 'an employee welfare benefit plan or employee pension

benefit plan or a plan which is both an employee welfare benefit plan and an employee

pension benefit plan.'" <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 8-9 (1987) (citing

29 U.S.C. § 1002(3)). The lack of a definition of "employee benefit plan" led the

Department of Labor ("DOL")[3] to "clarify the limits" of an employee pension benefit plan

for purposes of ERISA. <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 1003–04

(9th Cir. 2010). This clarification came in the form of a regulatory safe harbor in 1975

("1975 Safe Harbor"), which exempted certain Individual Retirement Account ("IRA")

plans. 29 C.F.R. § 2510.3-2(d); <u>Daniels-Hall</u>, 629 F.3d at 999. Under the 1975 Safe

Harbor, employer payroll deductions for remittance to an employee's IRA are exempted

from ERISA if:

> (i) No contributions are made by the employer or employee association;
>
> (ii) Participation is completely voluntary for employees or members;
>
> (iii) The sole involvement of the employer or employee organization is without endorsement to permit the sponsor to publicize the program to employees or members, to collect contributions through payroll deductions or dues checkoffs and to remit them to the sponsor; and
>
> (iv) The employer or employee organization receives no consideration in the form of cash or otherwise, other than reasonable compensation for services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-2(d)(1). "[A]n employer that qualifies for the [1975 Safe Harbor] is

considered not to have established or maintained an employee pension benefit plan . . .

---

[3] The DOL Secretary is empowered to enact regulations to carry out the provisions of ERISA. 29 U.S.C. § 1135.

3

1  [and] would therefore not be considered an employee pension benefit plan" for purposes

2  of ERISA.  Daniels-Hall, 629 F.3d at 1003–04.  Significant to the Court's analysis here,

3  discussed infra, is that the term "completely voluntary" is undefined within the 1975 Safe

4  Harbor.

5      Defendants contend that in recent years a growing number of citizens lack

6  sufficient retirement income.  In response, several states began exploring state-run

7  retirement savings programs.  In 2012, the California Legislature passed the California

8  Secure Choice Retirement Savings Trust Act, which created the CalSavers program to

9  address the lack of retirement savings for many of the state's citizens.  Cal. Gov't Code

10  §§ 100000–100050.  CalSavers creates a State-sponsored retirement savings plan for

11  California employees who do not have access to an employer-provided plan.  Cal. Gov't

12  Code § 100000(a), (c)–(d).  The Program requires an "Eligible employer"[4] to "allow

13  employee participation in the [CalSavers] program" via payroll deductions if that

14  employer does not offer a retirement savings program of its own.  Cal. Gov't Code

15  § 100032(b)–(d).  Eligible employers must automatically enroll their employees and remit

16  payroll deductions to the Program "unless the employee elects not to participate."  Cal.

17  Gov't Code § 100032(f)(1).  That is, employees of Eligible employers are automatically

18  enrolled, but can "opt out" of CalSavers if desired.

19      Faced with concerns that state-mandated retirement savings programs with "opt

20  out," as opposed to "opt in," enrollments may not be "completely voluntary" as

21  contemplated in the 1975 Safe Harbor, the DOL issued additional regulatory guidance in

22  2016 ("2016 Safe Harbor") establishing ERISA exemptions for state-sponsored auto-

23  IRAs.  See 81 FR 59464 (entitled "Savings Arrangements Established by States for Non-

24  Governmental Employees").  The preamble to the 2016 Safe Harbor explained:

25  ///

---

26  _____

27      [4] "Eligible employer" is defined as "a person or entity engaged in a business, industry, profession, trade, or other enterprise in the state, whether for profit or not for profit, excluding the federal government, the state, any county, any municipal corporation, or any of the state's units or instrumentalities, that has five or more employees and that satisfies the requirements to establish or participate in a payroll deposit retirement savings arrangement."  Cal. Gov't Code § 100000(d)(1).

28

> With regard to the 1975 IRA Payroll Deduction Safe Harbor's condition requiring that an employee's participation be "completely voluntary," the Department intended this term to mean that the employee's enrollment in the program must be <u>self-initiated</u>. In other words, under the safe harbor, the decision to enroll in the program must be made by the employee, not the employer. <u>If the employer automatically enrolls employees in a benefit program, the employees' participation would not be "completely voluntary"</u> and the employer's actions would constitute the "establishment" of a pension plan, within the meaning of ERISA . . . . <u>This is true even if the employee can affirmatively opt out of the program</u>.

81 FR 59464, 59465 (emphasis added). The 2016 Safe Harbor set up a "voluntary" participation standard for "state required and administered programs," such that "automatic enrollment arrangements with employee opt-out features" would be expressly exempt from ERISA. 80 FR 72006, 72009. That the 2016 Safe Harbor would have exempted CalSavers from ERISA's provisions is undisputed. However, under the Congressional Review Act, Congress passed legislation in 2017 repealing the 2016 Safe Harbor, which the President signed into law.[5] Subsequent to the repeal of the 2016 Safe Harbor, California has continued in its efforts to implement the CalSavers program, which gave rise to this current action.

Plaintiffs filed their Complaint on May 31, 2018 (ECF No. 1), which Defendants moved to dismiss via the present Motion on July 25, 2018. ECF No. 9. After consideration of the Parties' briefs, the Court ordered supplemental briefings concerning interpretations of the 1975 Safe Harbor's "completely voluntary" requirement and how, if at all, this requirement applies to CalSavers, as well as how the principals of conflict and field preemption may apply in the ERISA context. ECF No. 19. Plaintiffs and Defendants filed their supplemental briefs on November 15, 2018. ECF Nos. 21 and 22.

///

///

///

---

[5] <u>See</u> 115 P.L. 35, 131 Stat. 848 ("Congress disapproves the rule submitted by the Department of Labor relating to 'Savings Arrangements Established by States for Non-Governmental Employees' [ ] and such rule shall have no force or effect.") (citation omitted).

**STANDARD**

**A.    Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden of establishing the contrary rests upon the party asserting jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630 (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party."  Id.; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings.  Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction.

1  <u>Savage v. Glendale High Union Sch. Dist. No. 205</u>, 343 F.3d 1036, 1039 n.1 (9th Cir.

2  2003). In the case of a facial attack, the motion to dismiss is granted only if the

3  nonmoving party fails to allege an element necessary for subject matter jurisdiction. <u>Id.</u>

4  However, in the case of a factual attack, district courts "may review evidence beyond the

5  complaint without converting the motion to dismiss into a motion for summary judgment."

6  <u>Safe Air for Everyone</u>, 373 F.3d at 1039.

7        In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's

8  allegations." <u>Thornill</u>, 594 F.2d at 733 (internal citation omitted). The party opposing the

9  motion has the burden of proving that subject matter jurisdiction does exist, and must

10 present any necessary evidence to satisfy this burden. <u>St. Clair v. City of Chico</u>,

11 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are

12 challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the

13 mere assertion that factual issues may exist. <u>Trentacosta v. Frontier Pac. Aircraft Ind.,</u>

14 <u>Inc.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting <u>Exch. Nat'l Bank of Chi. v. Touche</u>

15 <u>Ross & Co.</u>, 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may

16 review any evidence necessary, including affidavits and testimony, in order to determine

17 whether subject matter jurisdiction exists. <u>McCarthy v. United States</u>, 850 F.2d 558, 560

18 (9th Cir. 1988); <u>Thornhill</u>, 594 F.2d at 733. If the nonmoving party fails to meet its

19 burden and the court determines that it lacks subject matter jurisdiction, the court must

20 dismiss the action. Fed. R. Civ. P. 12(h)(3).

21        **B.     Rule 12(b)(6)**

22        On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

23 allegations of material fact must be accepted as true and construed in the light most

24 favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38

25 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim

26 showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of

27 what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>,

28 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). A

complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### C. Leave to Amend

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

8

Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

### A. Standing

Defendants move under both Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim, asserting that Plaintiffs lack Article III and ERISA standing. Article III standing, unlike statutory standing, is a jurisdictional requirement that Plaintiffs, as the parties invoking federal jurisdiction in this matter, have the burden of establishing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). It requires not only an injury in fact, but also a causal connection between Defendants' conduct and a showing that action by the Court can redress that injury:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical."…Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." …Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (internal citation and formatting omitted).

9

1    Here, HJTA asserts standing as an employer of California workers, as well as

2    associational standing based on its members.  ECF No. 16 at 2, 10.  HJTA Employees

3    allude to standing as California taxpayers.  Id. at 5.  Conversely, Defendants contend

4    that each Plaintiff lacks standing because CalSavers is not open for enrollment and

5    therefore no injury could have been caused by the Program.[6]  ECF No. 9 at 9.  As to

6    HJTA's associational standing, Defendants argue that the issues presented in this case

7    are not germane to HJTA's purpose as an organization (i.e., taxpayers' rights).  ECF

8    No. 18 at 4–5.  Finally, Defendants additionally argue that HJTA Employees lack

9    standing because even if CalSavers creates an ERISA plan, they are not "participants" in

10   the plan because they are not enrolled.  Id. at 10–11.

11       As to the HJTA Employees, the Court finds that they lack standing.  They are not

12   yet participating in an ERISA plan, and their potential injuries, if any, are too remote to

13   confer standing.  See Miller v. Rite Aid Corp., 504 F.3d 1102, 1105–06 (9th Cir. 2007)

14   ("civil action under ERISA may be brought by a 'participant' in or 'beneficiary' of an

15   ERISA plan . . . [and] [w]e have repeatedly held that whether a living party is a

16   'participant' or 'beneficiary' is determined as of the time the lawsuit is filed.") (emphasis

17   added).  Also, Plaintiffs cannot assert taxpayer standing to gain access to Federal Court.

18   DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 346 (2006).

19       Turning to HJTA's contentions regarding associational standing, the Court agrees

20   with Defendants that the issues presented in this case are not germane to HJTA's

21   purpose such that it would be able to assert standing on behalf of its members.

22   However, the Court nonetheless further finds that HJTA does have standing as an

23   "Eligible employer" under the Program.  If CalSavers does not create an ERISA plan,

24   HJTA lacks ERISA standing—however, if the Program does create an ERISA plan,

25   HJTA has both Article III and statutory standing as a potential plan fiduciary.  The

26   arguments concerning HJTA's ERISA standing thus intertwine with the ultimate

27   preemption questions of this case, and touch upon substantive elements of HJTA's

28   _____

     [6] Enrollment was projected to begin by the end of 2018 or early 2019.  ECF No. 9 at 4.

1  claims.  Precedent supports treating these situations as "nonjurisdictional" because

2  HJTA's "statutory standing or lack thereof under ERISA does not affect whether the

3  Court has subject matter jurisdiction . . . [w]hether [a plaintiff] is a [plan] participant for

4  purposes of ERISA is a substantive element of his claim, not a prerequisite for subject

5  matter jurisdiction."  Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 971

6  (9th Cir. 2012).  Accordingly, for present purposes, the Court finds that HJTA has

7  standing as a potential ERISA plan fiduciary.

8        **B.    Ripeness**

9        The doctrine of ripeness is also a jurisdictional concept designed "to prevent the

10  courts, through premature adjudication, from entangling themselves in abstract

11  disagreements" that do not yet rise to the level of a concrete case or controversy.

12  Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580 (1985).  Whereas

13  standing is concerned with whether the right party is suing, ripeness hinges on whether

14  the lawsuit is brought at the proper time.  See id. (citing Regional Rail Reorg. Act Cases,

15  419 U.S. 102, 140 (1974)).  "A claim is not ripe for adjudication if it rests upon 'contingent

16  future events that may not occur as anticipated, or indeed may not occur at all.'"

17  Texas v. U.S., 523 U.S. 296, 300 (1998), citing Thomas, 473 U.S. at 580–81.  The

18  ripeness inquiry has thus been characterized as "standing on a timeline" in which the key

19  determination is whether the case and controversy is such that judicial intervention is

20  necessary.  Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009).

21  Consequently, while ripeness and standing are related concepts and tend to significantly

22  overlap, particularly in pre-enforcement challenges to laws and regulations, they still

23  should be addressed separately.  See, e.g., Eternal Word Tel. Network, Inc. v. Sebelius,

24  935 F. Supp. 2d 1196, 1213 (N.D. Ala. 2013).

25        Defendants contend that this case is not ripe because enrollments have not yet

26  occurred, CalSavers' Board of Directors has not published final regulations, and HJTA

27  would not be subject to CalSavers' requirements for at least 36 months given its current

28  number of employees.  ECF No. 9 at 8.  Plaintiffs of course disagree, pointing to the

1   2012 statute that created CalSavers and which provides that the Program "is approved

2   by the Legislature and <u>implemented</u> as of January 1, 2017."  Cal. Gov't Code § 100046

3   (emphasis added).  Plaintiffs have the better argument.  CalSavers was enacted in 2012,

4   is "implemented" as of 2017, and is on the eve of enrolling its first participants.  Its most

5   contentious requirement—the mandatory auto-enrollment feature—is already

6   established.  Furthermore, if CalSavers creates an ERISA plan, the harm to HJTA in

7   becoming a forced fiduciary would be "reasonable and imminent, and not merely

8   theoretically possible."  <u>ProtectMarriage.com - Yes on 8 v. Bowen</u>, 752 F.3d 827, 838–39

9   (9th Cir. 2014); <u>see also</u> <u>Gobeille v. Liberty Mut. Ins. Co.</u>, 136 S. Ct. 936, 945 (2016) ("[a]

10  plan need not wait to bring a pre-emption claim until confronted with numerous

11  inconsistent obligations and encumbered with any ensuing costs.").  Therefore, the Court

12  finds that this case is ripe for adjudication.

13      **C.    Preemption**

14      The heart of the parties' dispute ultimately lies in their preemption arguments.

15  The Court first addresses the 1975 Safe Harbor's application to CalSavers, then turns to

16  an analysis of preemption in the ERISA context.

17          **1.    CalSavers is not entitled to the exemptions set forth in the 1975
            Safe Harbor.**
18

19      If CalSavers meets the requirements of the 1975 Safe Harbor, ERISA does not

20  preempt it.  The 1975 Safe Harbor outlined four requirements for ERISA exclusion of

21  employer payroll deduction IRAs: (1) no employer contributions are allowed;

22  (2) employee participation must be "completely voluntary"; (3) the employer cannot

23  endorse the program; and (4) the employer cannot receive compensation from the

24  program.  29 C.F.R. § 2510.3-2(d).  Only one of these factors—whether CalSavers is

25  completely voluntary—is at issue here.

26      Plaintiffs contend that if employers automatically enroll their employees into

27  CalSavers, as is mandated by the California law, the Program is not completely

28  voluntary and thus establishes an ERISA plan.  ECF No. 16 at 15–16.  Indeed, the

12

1    preamble to the 2016 Safe Harbor explained that the new regulation was necessary

2    because state-mandated IRAs with auto-enrollment features would fall outside the

3    provisions of the 1975 Safe Harbor.  81 FR 59464, 59465.  This arises from the DOL's

4    2016 interpretation that "completely voluntary" under 1975 Safe Harbor requires that the

5    employee initiate participation.  Yet, no other authorities support this interpretation of

6    "completely voluntary" with regard to state action; Plaintiffs did not give any, and simply

7    rely upon the 2016 Safe Harbor to support this premise.  See ECF No. 16 at 15.  An

8    agency's interpretation of its own regulation is given significant deference.  See Udall v.

9    Tallman, 380 U.S. 1, 16 (1965) ("[w]hen the construction of an administrative regulation

10    rather than a statute is in issue, deference [to the agency charged with its administration]

11    is even more clearly in order.").  However, in repealing the 2016 Safe Harbor pursuant to

12    the Congressional Review Act, Congress repealed the DOL's interpretation of the

13    matters at issue here, making determining congressional intent more difficult.

14        That said, based on the record as a whole, the Court declines to hold that

15    CalSavers is subject to the exemptions afforded by the 1975 Safe Harbor.  But that does

16    not end the Court's analysis if resort to a safe harbor is unnecessary in the first place.

17    Accordingly, it must still examine Plaintiff's claims under traditional federal preemption

18    principles.

19            **2.    Regardless of Whether CalSavers is Covered by the 1975 Safe
                      Harbor, it is Still Not Preempted by ERISA.**
20

21        The Ninth Circuit has recently held that "under the modern approach a state law is

22    not preempted merely because it has a literal 'connection with' an ERISA

23    plan . . . .  Instead, the law must actually 'govern[ ] . . . a central matter of plan

24    administration' or 'interfere[ ] with nationally uniform plan administration.'"  Chambers,

25    903 F.3d at 847 (citation omitted) (citing Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936,

26    943 (2016)) (emphasis in original).  Neither of these prohibited actions occur as a result

27    of CalSavers.

28    ///

1    Here, Eligible employers are required to adhere to the administrative

2    requirements of CalSavers, but because the Program only applies to employers without

3    existing retirement plans, no ERISA plans are "governed" or "interfered" with because of

4    the statute.  See Cal. Gov't Code § 100032(g)(1) ("An employer that provides an

5    employer-sponsored retirement plan . . . shall be exempt from the requirements of

6    [CalSavers].").  The primary purposes of ERISA are to (1) protect the interests of

7    employees in receiving the benefits promised by an employer and (2) protect employers

8    from the burdens of meeting multiple regulatory requirements for managing ERISA

9    plans.  Chambers, 903 F.3d at 845.  Yet, Eligible employers are not required to make

10   any promises to employees—they simply remit payroll deducted payments to the

11   Program and otherwise have no discretion regarding the funds.  Such ministerial duties

12   fall outside of scope of conduct that Congress intended to regulate in enacting ERISA.

13   See Golden Gate Rest. Ass'n v. City & Cty. of S.F., 546 F.3d 639, 650 (9th Cir. 2008) ("It

14   is within the exercise of [ ] discretion that an employer has the opportunity to engage in

15   the mismanagement of funds and other abuses with which Congress was concerned

16   when it enacted ERISA.").

17         Defendants cite several cases tending to show that state mandates concerning

18   employee benefits are not preempted if the law does not force employers to create or

19   alter ERISA plans.  In Golden Gate, the court upheld a San Francisco ordinance

20   requiring employers within the city to make minimum health care expenditures on behalf

21   of their employees.  546 F.3d at 642.  Employers who met minimum spending

22   requirements via other methods (such as existing ERISA plans) were not required to

23   make additional payments, but employers who did not were required to make payments

24   to a City-administered health care program.  Id. at 643–46.  The ordinance required

25   employers to track workers who performed qualifying work within the city, to include the

26   number of hours worked and calculations on previously paid health care expenditures.

27   Id. at 651.  In finding that the ordinance did not create an ERISA plan, the court provided

28   that, "[a]n employer's administrative obligations under the City-payment option do not run

14

the risk of mismanagement of funds or other abuse . . . [and that] . . . maintaining these

records amount[ed] to nothing more than the exercise of 'a modicum of discretion.'"

Golden Gate, 546 F.3d at 651.

In Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987), the Court found that a

Maine statute requiring employers who closed factories within the State to give one-time

severance payments to impacted employees did not "relate to any employee benefit

plan," and thus was not preempted by ERISA.  The Court reasoned, "[i]f a State creates

no prospect of conflict with a federal statute, there is no warrant for disabling it from

attempting to address uniquely local social and economic problems." Id. at 19.

While Plaintiffs rely on Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir.

1982) to support the contention that CalSavers falls within ERISA's provisions, this

reliance is misplaced.  The Donovan court provided that, a "plan, fund, or program under

ERISA is established if from the surrounding circumstances a reasonable person can

ascertain the intended benefits, a class of beneficiaries, the source of financing, and

procedures for receiving benefits." Id. at 1373.  However, the Ninth Circuit declined to

apply this test when considering government mandates on employers, stating that "[w]e

would be very hesitant to hold that the Donovan criteria apply to statutory administrative

burdens imposed on an employer where, as here, that employer has made no promises

whatsoever to its employees . . . ." Golden Gate, 546 F.3d at 652.  This Court holds the

same hesitation here.

Finding that ERISA preempts CalSavers would be out-of-step with the underlying

purposes of the Act.  CalSavers does not govern a central matter of an ERISA plan's

administration, nor does it interfere with nationally uniform plan administration.  On this

///

///

///

///

///

basis, the Court finds that CalSavers is not preempted by ERISA.  Accordingly, Defendants' Motion to Dismiss is GRANTED.[7, 8]

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED.  Because CalSavers is not subject to preemption under ERISA, the Court further finds that providing Plaintiffs leave to amend would be futile.  Accordingly, Plaintiffs' claims are hereby DISMISSED with one final leave to amend.  The Court is very aware of the importance of this case and considered granting this motion without leave to amend.  However, notwithstanding the Court's concern, allowing one final opportunity to amend may be in the parties' best interest.  Plaintiffs will have twenty (20) days from the date this order is electronically filed to file an amended complaint.  If no amended complaint is filed within said time period, this case will be dismissed without leave to amend with no further notice to the parties.

IT IS SO ORDERED.

Dated:  March 28, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[7]  Under Federal Rule of Evidence 201, a court may take judicial notice of matters which are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  For purposes of the present Motion, Defendants' Requests for Judicial Notice ("RJN"), ECF Nos. 10 and 23, and Plaintiffs' RJN, ECF No. 17, are GRANTED.

[8]  Defendants raise other contentions that Plaintiffs' claims are barred by the Eleventh Amendment.  ECF No. 9 at 2, 19–20.  However, given the ruling on Defendants' Motion, the Court finds it unnecessary to address these arguments.