1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   HOWARD JARVIS TAXPAYERS              No.  2:18-cv-01584-MCE-KJN
     ASSOCIATION, JONATHAN COUPAL,
12   and DEBRA DESROSIERS,

13                 Plaintiffs,            **MEMORANDUM AND ORDER**

14          v.

15   THE CALIFORNIA SECURE CHOICE
     RETIREMENT SAVINGS PROGRAM
16   and JOHN CHIANG, in his official
     capacity as Chair of the CALIFORNIA
17   SECURE CHOICES RETIREMENT
     SAVINGS INVESTMENT BOARD,
18
                   Defendants.
19

20          The Howard Jarvis Taxpayers Association ("HJTA") and individually named HJTA

21   employees Jonathan Coupal and Debra Desrosiers ("HJTA Employees") (collectively,

22   "Plaintiffs") filed this action against the California Secure Choice Retirement Savings

23   Program ("CalSavers" or "the Program") and California State Treasurer John Chiang

24   (collectively, "Defendants") contending that the Employee Retirement Income Security

25   Act ("ERISA" or "the Act") preempts the Program.

26          Plaintiffs' Complaint was dismissed with leave to amend.  Mem. and Order, ECF

27   No. 24 ("Prior Order").  They subsequently filed the First Amended Complaint ("FAC")

28   requesting two forms of relief: first, a declaratory judgment that CalSavers is preempted

                                          1

by ERISA; and second, an injunction pursuant to California Code of Civil Procedure § 526a to permanently enjoin spending of taxpayer funds on the Program.  Presently before the Court is Defendants' second Motion to Dismiss ("Present Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending, in part, that CalSavers is not an ERISA plan and thus is not preempted.  ECF No. 30.

While Plaintiffs were given an opportunity to amend their complaint, this matter again coalesces around the single narrow question addressed in the Prior Order: does CalSavers, a state-mandated auto-enrollment retirement savings program, create an "employee benefit plan," such that it is preempted by ERISA?  For the reasons set forth below, this Court again finds that it does not and therefore GRANTS Defendants' Motion to Dismiss.[1]

## BACKGROUND[2]

Congress enacted ERISA in 1974 "to promote the interests of employees and their beneficiaries in employee benefit plans" and to "eliminate the threat of conflicting or inconsistent State and local regulation of employee benefit plans."  Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 676 (9th Cir. 1998) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 99 (1983)); see also ERISA, 88 Stat. 832, as amended, 29 U.S.C. §§ 1001–1461.  While ERISA does not require employers to provide any minimum set of benefits to employees, if such plans are "established or maintained . . . by any employer," they must conform to various reporting and fiduciary requirements of the Act.  N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 651 (1995).  Regarding ERISA's effect

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

[2] Except where noted otherwise, the following recitation of facts is taken from this Court's Prior Order (ECF No. 24) as well as the parties' pleadings on this Motion.

1    on State statutes, it "supersede[s] any and all State laws insofar as they may now or

2    hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).

3         Defendants contend that in recent years a growing number of citizens lack

4    sufficient retirement income.  In response, several states began exploring state-run

5    retirement savings programs.  In 2012, the California Legislature passed the California

6    Secure Choice Retirement Savings Trust Act, which created the CalSavers program to

7    address the lack of retirement savings for many of the state's citizens.  Cal. Gov't

8    Code §§ 100000–100050.  CalSavers creates a State-sponsored retirement savings

9    plan for California employees who do not have access to an employer-provided plan.

10   Id. § 100000(b)–(d).  The Program is designed and implemented by the California

11   Secure Choice Retirement Savings Investment Board (the "Board") and contributions are

12   placed in the California Secure Choice Retirement Savings Trust (the "Trust"), which is

13   administered by the Board.  Id. §§ 100002(e), 100004.

14        The Program requires an "Eligible employer"[3] to "allow employee participation in

15   the [CalSavers] program" via payroll deductions if that employer does not offer a

16   retirement savings program of its own.  Id. § 100032(b)–(d).  Eligible employers must

17   automatically enroll their employees and remit payroll deductions to the Program "unless

18   the employee elects not to participate."  Id. § 100032(f)(1).  That is, employees of Eligible

19   employers are automatically enrolled, but can "opt out" of CalSavers if desired.

20        Plaintiffs filed their Complaint on May 31, 2018 (ECF No. 1), and Defendants

21   moved to dismiss on July 25, 2018 ("Prior Motion").  ECF No. 9.  Subsequently, this

22   Court granted the Prior Motion, finding that:  (1) the HJTA had standing as an "Eligible

23   employer" but the HJTA Employees lacked standing as California taxpayers; (2) the case

24   is ripe for adjudication; (3) CalSavers is not entitled to the exemptions set forth in a 1975

25   regulatory safe harbor ("1975 Safe Harbor"); and (4) CalSavers is not preempted by

26   _____

27        [3] "Eligible employer" is defined as "a person or entity engaged in a business, industry, profession, trade, or other enterprise in the state, whether for profit or not for profit, excluding the federal government, the state, any county, any municipal corporation, or any of the state's units or instrumentalities, that has five or more employees and that satisfies the requirements to establish or participate in a payroll deposit retirement savings arrangement."  Id. § 100000(d)(1).

28

1    ERISA because it does not govern a central matter of an ERISA plan's administration,

2    nor does it interfere with nationally uniform plan administration.  See generally Prior

3    Order, ECF No. 24.

4            While this Court granted the Prior Motion with one final leave to amend, it noted

5    that amendment would inevitably be futile as CalSavers is not subject to preemption

6    under ERISA.  Plaintiffs nonetheless filed the FAC on April 11, 2019, alleging similar

7    claims to those in their original Complaint.  ECF No. 25.  Subsequently, Defendants

8    moved to dismiss via the Present Motion on May 28, 2019, and this matter has been fully

9    briefed.  ECF Nos. 30, 37, 38.  On September 13, 2019, the United States filed a

10   Statement of Interest opposing Defendants' Present Motion, and both Plaintiffs and

11   Defendants filed responses.  ECF Nos. 43, 47, 48.

12

13                                              **STANDARD**

14

15           **A.      Rule 12(b)(1)**

16           Federal courts are courts of limited jurisdiction and are presumptively without

17   jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

18   377 (1994).  The burden of establishing the contrary rests upon the party asserting

19   jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a

20   case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630

21   (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at

22   any point during the litigation, through a motion to dismiss pursuant to Federal Rule of

23   Civil Procedure 12(b)(1).  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l

24   Union of Operating Eng'rs v. Cty. of Plumas, 559 F.3d 1041, 1043–44 (9th Cir. 2009).

25   Indeed, "courts have an independent obligation to determine whether subject matter

26   jurisdiction exists, even in the absence of a challenge from any party."  Id.; see Fed. R.

27   Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is

28   lacking).

                                                      4

There are two types of motions to dismiss for lack of subject matter jurisdiction:  a facial attack, and a factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings.  Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction.  Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).  In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction.  Id.  However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations."  Thornhill, 594 F.2d at 733 (internal citation omitted).  The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden.  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist.  Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists.  McCarthy v. United States, 850 F.2d 558, 560

1   (9th Cir. 1988); <u>Thornhill</u>, 594 F.2d at 733.  If the nonmoving party fails to meet its

2   burden and the court determines that it lacks subject matter jurisdiction, the court must

3   dismiss the action.  Fed. R. Civ. P. 12(h)(3).

4        **B.    Rule 12(b)(6)**

5        On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

6   allegations of material fact must be accepted as true and construed in the light most

7   favorable to the nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38

8   (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

9   showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of

10  what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>,

11  550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  A

12  complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual

13  allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to

14  relief requires more than labels and conclusions, and a formulaic recitation of the

15  elements of a cause of action will not do."  <u>Id.</u> (internal citations and quotations omitted).

16  A court is not required to accept as true a "legal conclusion couched as a factual

17  allegation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at

18  555).  "Factual allegations must be enough to raise a right to relief above the speculative

19  level."  <u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller,

20  <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) (stating that the pleading must

21  contain something more than "a statement of facts that merely creates a suspicion [of] a

22  legally cognizable right of action")).

23        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

24  assertion, of entitlement to relief."  <u>Twombly</u>, 550 U.S. at 555 n.3 (internal citations and

25  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

26  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

27  the nature of the claim, but also 'grounds' on which the claim rests."  <u>Id.</u> (citing Wright &

28  Miller, <u>supra</u>, at 94, 95).  A pleading must contain "only enough facts to state a claim to

6

1   relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their

2   claims across the line from conceivable to plausible, their complaint must be dismissed."

3   Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

4   that actual proof of those facts is improbable, and 'that a recovery is very remote and

5   unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

6           **C.     Leave to Amend**

7           A court granting a motion to dismiss a complaint must then decide whether to

8   grant leave to amend.  Leave to amend should be "freely given" where there is no

9   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

10  to the opposing party by virtue of allowance of the amendment, [or] futility of the

11  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

12  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

13  be considered when deciding whether to grant leave to amend).  Not all of these factors

14  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

15  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

16  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

17  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

18  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

19  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

20  1989) ("Leave need not be granted where the amendment of the complaint . . .

21  constitutes an exercise in futility . . . .")).

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**ANALYSIS**[4]

2

3       As stated in this Court's previous Order, "the heart of the parties' dispute lies in

4    [the] preemption arguments."  Prior Order, ECF No. 24, at 12:14.  Generally, ERISA shall

5    "supersede any and all State laws insofar as they may now or hereafter <u>relate to</u> any

6    <u>employee benefit plan</u> . . . ."  29 U.S.C. § 1144(a) (emphasis added).  In the FAC,

7    Plaintiffs reallege that CalSavers creates an employee benefit plan preempted by

8    ERISA.  The Court first addresses whether CalSavers is an employee benefit plan, then

9    turns to an analysis of whether CalSavers relates to an ERISA plan.[5]

10       **A.   CalSavers is Not an Employee Benefit Plan Under ERISA.**

11       The term "employee benefit plan" is defined as "an employee welfare benefit plan

12   or an employee pension benefit plan or a plan which is both an employee welfare benefit

13   plan and an employee pension benefit plan."  29 U.S.C. § 1002(3).  An "employee

14   pension plan" is "any plan, fund, or program . . . established or maintained by an

15   employer" that provides retirement income to employees.  29 U.S.C. § 1002(2)(A)(i).

16   The Court will first discuss whether the Board and Trust are employers under ERISA,

17   then turn to whether CalSavers is established or maintained by an employer.

18   ///

---

19       [4] As a preliminary matter, Plaintiffs ask the Court to reconsider whether the HJTA Employees have

20   individual taxpayer standing. FAC ¶ 29. As this Court previously discussed, individuals cannot assert
     taxpayer standing to gain access to Federal Court. <u>See</u> <u>Valley Forge Christian Coll. v. Ams. United for</u>
     <u>Separation of Church and State, Inc.</u>, 454 U.S. 464, 477 (1982); <u>Daimler Chrysler Corp. v. Cuno</u>, 547 U.S.

21   332, 346 (2006).

22       [5] The Court is cognizant that Defendants assert two additional arguments. First, they contend that
     CalSavers establishes an individual retirement account ("IRA") exempt from ERISA. Defs.' Mot. Dismiss,

23   ECF No. 30, at 6:6–7; <u>see</u> Cal. Gov't Code § 100008. "[F]ederal regulations clarify that so long as the
     involvement of an employer or employee organization is strictly limited, the term[ ] 'employee pension

24   benefit plan' . . . shall not include an [IRA] described in section 408(a) of the [Internal Revenue] Code . . . ."
     <u>Charles Schwab & Co., Inc. v. Debickero</u>, 593 F.3d 916, 919 (9th Cir. 2010) (citing 29 C.F.R. § 2510.3–

25   2(d)(1)) (internal quotation marks omitted). Second, they again contend that CalSavers is subject to the
     exemptions afforded by the 1975 Safe Harbor, which exempts certain IRA plans. Defs.' Mot. Dismiss,

26   ECF No. 30, at 11–12. However, the parties again dispute whether an employee's participation is
     "completely voluntary," a question considered by the Court in its Prior Order. Prior Order, ECF No. 24, at

27   12–13. For the reasons outlined in that order, the Court again declines to hold that CalSavers is entitled to
     the exemptions set forth in the 1975 Safe Harbor. No further analysis is warranted on either question,

28   however, because ERISA coverage depends upon the level of employer involvement in employee benefit
     plans, which means neither of these issues is dispositive.

1

2

**1.      The Board and Trust Are Not Employers Under ERISA Because They Do Not Act Directly or Indirectly in the Interest of an Employer.**

3      As defined in ERISA, an "employer" means "any person acting directly as an

4  employer, or indirectly in the interest of an employer, in relation to an employee benefit

5  plan; and includes a group or association of employers acting for an employer in such

6  capacity."  29 U.S.C. § 1002(5).  The parties concede that actual employers are

7  "employers" under ERISA, but Plaintiffs further assert that the Board and Trust are

8  employers "because a 'trust' is a 'person' who is 'acting … indirectly in the interest of an

9  employer.'"[6]  FAC ¶ 20.

10      Plaintiffs primarily rely on Kanne v. Conn. Gen. Life Ins. Co., where construction

11  industry employers established a trust pursuant to ERISA requirements and offered

12  group health insurance benefits to employees that were administered by an employer

13  association.  867 F.2d 489, 491 (9th Cir. 1988).  The court held that the association

14  administering the trust could "be an ERISA employer" under the definition laid out in

15  29 U.S.C. § 1002(5).  Id. at 493.

16      Plaintiffs' use of Kanne, however, is unpersuasive.  As Plaintiffs point out, the

17  Ninth Circuit did not analyze whether the trust was an ERISA employer and as such,

18  Kanne does not provide any insight as to whether the Trust here is an "employer."  Pls.'

19  Opp., ECF No. 37, at 13:22–24.  Furthermore, unlike the trust in Kanne, which was

20  administered by an association of employers, the Trust in this case is administered by

21  the state-created Board, not a group of employers.  As such, the Court declines to find

22  that the Board and Trust are "employers" under ERISA.  The analysis does not end here,

23  as the Court must still determine whether CalSavers is "established or maintained" by

24  actual employers.

25  ///

26  ///

27

28

---

[6] The Court notes that Plaintiffs broadly refer to both the Board and Trust as ERISA employers, but their analysis is limited to the Trust only.  Compare FAC ¶ 20, with Pls.' Opp., ECF No. 37, at 12–13.

1

**2.    Actual Employers Neither Establish nor Maintain CalSavers.**

2

A plan, fund, or program under ERISA must be established or maintained by an

3

employer.[7]  29 U.S.C. § 1002(2)(A).  The Ninth Circuit has held that "an employer's

4

administrative duties must involve the application of more than a modicum of discretion

5

in order for those duties to amount to an ERISA plan."  Golden Gate, 546 F.3d at 652.

6

An employer's decision in exercising ministerial duties does not rise to the level of

7

discretion required to be an ERISA fiduciary.  Az. State Carpenters Pension Tr. Fund v.

8

Citibank, 125 F.3d 715, 722 (9th Cir. 1997).  Additionally, an employer who makes no

9

promises to its employees regarding an employee benefit plan or its coverage is not

10

considered to have established or maintained such plans.  See Golden Gate, 546 F.3d

11

at 654.

12

Plaintiffs argue that even if the Board and Trust are not "employers" under ERISA,

13

CalSavers requires thousands of actual employers to create their own separate ERISA

14

plans.  Pls.' Opp., ECF No. 37, at 19:3–10.  The Court disagrees.  See Cal. Gov't Code

15

§ 100034(b) ("The [P]rogram is a state-administered program, not an employer-

16

sponsored program.").  Actual employers have no discretion in the administration of

17

CalSavers and do not make any promises to employees:  employers simply remit payroll

18

deducted payments to the Program and otherwise have no discretion regarding the

19

funds.  Cal. Gov't Code § 100000(h); see Golden Gate, 546 F.3d at 650 ("It is within the

20

exercise of [ ] discretion that an employer has the opportunity to engage in the

21

mismanagement of funds and other abuses with which Congress was concerned when it

22

enacted ERISA.").

23

Plaintiffs also refer to the phrase "maintenance mode" on the CalSavers website

24

as an admission that each actual employer will be maintaining its own ERISA plan.  Pls.'

25

26

27

28

_____

[7] Plaintiffs and the United States ask the Court to find that CalSavers constitutes an ERISA plan under the test set forth in Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982).  See FAC ¶ 20; U.S. Statement of Interest, ECF No. 43, at 10 n.2.  However, as the Court previously discussed, the Ninth Circuit has declined to apply Donovan to government mandates on employers and has expressed hesitation in applying the test where "employers made no promises whatsoever to its employees . . . ."  Prior Order, ECF No. 24, at 15; see also Golden Gate Rest. Ass'n v. City & Cty. of S.F., 546 F.3d 639, 652 (9th Cir. 2008).

1   Opp., ECF No. 37, at 18:28.  However, the term "maintenance mode" is limited to

2   "submitting contributions and adding new employees."  Ex. E, FAC.  The role of actual

3   employers in CalSavers is limited to providing a roster of eligible employees, providing

4   contact information of eligible employees, making payroll deductions, and remitting such

5   deductions.  See Golden Gate, 546 F.3d at 651 (finding ERISA did not preempt city

6   ordinance requiring employers to track employees' hours, calculate payment amounts,

7   and remit payments to healthcare programs).  Such ministerial duties do not rise to the

8   level of an employee benefit plan established or maintained by actual employers.

9          Based on the foregoing, CalSavers is not an ERISA plan as defined in 29 U.S.C.

10   § 1002(2)(A) because it is not a plan which is established or maintained by an employer.

11   The only question that remains is whether CalSavers is preempted by ERISA because it

12   "relates to" an ERISA plan.

13          **B.      CalSavers Does Not Relate to an ERISA Plan.**

14          A state law is preempted by ERISA if it "relates to" an employee benefit plan.

15   29 U.S.C. § 1144(a).  A law "relates to" an ERISA plan if it has a connection with or

16   reference to such a plan.[8]  Cal. Div. of Labor Stds. Enf't v. Dillingham Constr. N.A.,

17   519 U.S. 316, 324 (1997).  The Court first examines whether CalSavers has a reference

18   to an ERISA plan, then turns to whether CalSavers has a connection with such a plan.

19          **1.      CalSavers Does Not Have an Impermissible "Reference To"
                      ERISA Plans.**

21          A state law has an impermissible "reference to" an ERISA plan if "(1) the law 'acts

22   immediately and exclusively upon ERISA plans,' or (2) 'the existence of ERISA plans is

23   essential to the law's operation.'"  Golden Gate, 546 F.3d at 657 (citing Dillingham,

24   519 U.S. at 325).  Plaintiffs argue that the Program's reliance on the existence or non-

25   existence of ERISA plans constitutes an impermissible reference.  Pls.' Opp., ECF

26   _____

27          [8] Plaintiffs assert that CalSavers' express reference to ERISA, even in an attempt to avoid ERISA preemption, is "no less of a preempting reference."  Pls.' Opp., ECF No. 37, at 21:8–9; see also D.C. v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129 (1992).  However, recent Supreme Court cases have rejected such a broad and literal application of ERISA preemption.  See Travelers, 514 U.S. at 655;

28   Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016).

1   No. 37, at 21:18–25.  While CalSavers applies only when actual employers do not have

2   an existing ERISA or employer-sponsored retirement plan, the Program does not

3   interfere with existing ERISA or retirement plans provided by actual employers.

4   Cal. Gov't Code § 100032(g)(1) ("An employer that provides an employer-sponsored

5   retirement plan . . . shall be exempt from the requirements of [CalSavers]."); see Golden

6   Gate, 546 F.3d at 659 ("Where a law is fully functional even in the absence of a single

7   ERISA plan, . . . it does not make an impermissible reference to ERISA plans.").

8   Therefore, CalSavers does not have an impermissible "reference to" ERISA plans.

9
            **2.    CalSavers Does Not Have an Impermissible "Connection With"
                    ERISA Plans.**
10

11         A state law has an impermissible "connection with" ERISA if that law "'governs . . .

12   a central matter of plan administration' or 'interferes with nationally uniform plan

13   administration.'"  Gobeille, 136 S. Ct. at 943 (quoting Egelhoff v. Egelhoff, 532 U.S. 141,

14   148 (2001)).  This Court previously found that "because the Program only applies to

15   employers without existing retirement plans, no ERISA plans are 'governed' or

16   'interfered' with because of the statute."  Prior Order, ECF No. 24, at 14:2–4.

17         Plaintiffs, as well as the United States, ask this Court to reconsider its prior

18   determination in light of the Supreme Court's holding in Gobeille.  In that case, a

19   Vermont statute required health insurers, including ERISA plans, to disclose "payments

20   relating to health care claims and other information relating to health care services" for a

21   state database.  Id. at 940.  The Court held the statute was preempted by ERISA

22   because the disclosure requirement interfered with the nationally uniform plan

23   administration and regulatory reporting domain of ERISA.  Id. at 946.

24         Gobeille differs from the present matter because CalSavers does not impose

25   additional reporting requirements on existing ERISA plans.  The information provided by

26   participating employers does not interfere with ERISA's regulatory domain because

27   reporting is only required where no ERISA or any other employer-sponsored retirement

28   plan exists.  There are no additional burdens or requirements imposed by CalSavers on

1    existing ERISA or employer-sponsored retirement plans which interfere with ERISA's

2    regulatory domain or govern any central matter of plan administration.  See S. Cal. IBEW-

3    NECA Trust Funds v. Std. Indus. Elec. Co., 247 F.3d 920, 925 (9th Cir. 2001)

4    ("California's statute . . . imposes no new reporting, disclosure, funding, or vesting

5    requirements for ERISA plans.  [Nor does it] tell employers how to write ERISA benefit

6    plans or how to determine ERISA beneficiary status . . . .").  As such, there is no

7    impermissible "connection with" an ERISA plan which results in the preemption of CalSavers.

8         In sum, the Court finds that CalSavers is neither an employee benefit plan nor

9    does it relate to an ERISA plan.  On these grounds, the Court concludes that CalSavers

10   is not preempted by ERISA and accordingly, Defendants' Present Motion is GRANTED.[9]

11

12                                    **CONCLUSION**

13

14        For all the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 30) is

15   GRANTED.[10]  Because CalSavers is not subject to preemption under ERISA and

16   Plaintiffs' FAC is substantially similar to their original Complaint, the Court further finds

17   that providing Plaintiffs leave to amend would be futile.  Accordingly, Plaintiffs' claims are

18   hereby DISMISSED without leave to amend.  The Clerk of the Court is directed to enter

19   judgment in favor of Defendants and to close the case.

20        IT IS SO ORDERED.

21   Dated:  March 10, 2020

22

23                                         _____
                                           MORRISON C. ENGLAND, JR.
                                           UNITED STATES DISTRICT JUDGE
24

25        [9] Under Federal Rule of Evidence 201, a court may take judicial notice of matters which are "not
     subject to unreasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the
26   trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot
     reasonably be questioned."  Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.
27   2001).  For purposes of the Present Motion, Defendants' Requests for Judicial Notice, ECF Nos. 31 and
     39, are GRANTED.

28        [10] The Court declines to exercise supplemental jurisdiction over the remaining state law claim.